UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JASON GRIFFITH, et al., | ) | |
| Plaintiffs, | ) ) ) | Civil Action No. 6: 07-442-DCR |
| V. | ) ) | |
| EDDIE GIRDLER, et al., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Eddie Girdler has filed motions for summary judgment in both his individual and official capacities. Both motions rely on many of the same arguments, so they will be addressed together. Girdler's motions will be granted with regard to three claims that fail as a matter of law. However, summary judgment will be denied, in part, because the Plaintiffs have presented sufficient evidence of a genuine issue of material fact regarding whether they were subjected to adverse employment actions by Girdler and whether there is a causal link between these actions and their support of Wiles.

### I.   LEGAL ANALYSIS

As discussed in a separate Memorandum Opinion entered this date, to survive summary judgment on a claim brought pursuant to § 1983, a plaintiff must demonstrate that a genuine issue of material fact exists with regard to the following two elements: "(1) the deprivation of a right secured by the Constitution or the laws of the United States and (2) the deprivation was caused by a person acting under the color of law." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d

460, 463 (6th Cir. 2006) (citation omitted). To satisfy the first element, the Plaintiffs must demonstrate that there is a genuine issue of material fact with regard to their claim of retaliation for exercising their First Amendment rights. A *prima facie* case of First Amendment retaliation is established by demonstrating that: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

In reviewing a party's motion for summary judgment, a court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. In doing so, all evidence must be viewed in the light most favorable to the nonmoving party. However, a mere scintilla of evidence is insufficient defeat a motion for summary judgment. *In re Petty*, 538 F.3d 431, 439 (6th Cir. 2008). Rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Id.* Ultimately, the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52; *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

### A. Goff's "Constructive Termination" As Assistant Chief Of Police

The Plaintiffs allege that Plaintiff Randy Goff's resignation as Assistant Chief of Police "was a constructive termination required by the Mayor's conduct in order to protect his job,

position, status, and retirement." However, they cannot establish that Goff's decision to voluntarily resign constitutes constructive termination by Girdler. Furthermore, since Girdler was mayor-elect at the time of the resignation, Goff's decision to resign cannot be attributed to any action done by Girdler under color of state law. Therefore, summary judgment will be granted in Girdler's favor regarding this claim.

Between election day and his inauguration, Girdler met with then-Police Chief Biggerstaff on at least two occasions. During these meetings, Girdler allegedly told Biggerstaff of his intent to punish the Plaintiffs for their support of Wiles once he was sworn in as mayor. According to Goff's deposition testimony, Biggerstaff told him what Girdler had said, so Goff tried to determine if he would have better job security as a Lieutenant rather than as an Assistant Chief. Goff testified that a lawyer advised him that he would have "a bigger umbrella of protection as a lieutenant." Therefore, in December 2006, Goff decided that "in order to assure the financial situation for my wife and children and myself . . . the best thing I could do was to resign and go back to lieutenant to try to have some protection from this man intending to punish me." Goff resigned his position before Girdler was inaugurated as Mayor on January 1, 2007.

Goff's deposition testimony does not establish that his decision to resign was a constructive termination. To demonstrate constructive termination, "an employee must show that work conditions were so unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 459 n. 4 (6th Cir. 2003). *See also Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 515 (6th Cir. 1991). Goff does not allege the work conditions in the Somerset Police Department were so

unpleasant that a reasonable person would be compelled to resign. Rather, he alleges that he feared possible future retribution from the mayor-elect and, therefore, decided that taking the preemptive measure of resigning and returning to his former position a Lieutenant would be in his best interest.

The Plaintiffs have not cited any authority suggesting that a resignation such as Goff's should be considered a constructive termination. Further, the Plaintiffs could not prevail on this claim under § 1983. One of the elements the Plaintiffs must demonstrate to establish a claim under § 1983 is that Girdler acted under the color of state law. *Ziegler v. Aukerman*, 512 F.3d 777, 782 (6th Cir. 2008). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citations and internal quotations omitted). At the time of Goff's resignation, Girdler was the mayor-elect, not the mayor. Therefore, the Plaintiffs cannot prevail on this claim, because Girdler could not have been acting under the color of state law at the time of Goff's resignation.[1] Summary judgment will be granted in favor of Girdler with regard to this issue, because the Plaintiffs cannot establish the existence of an essential element on which they would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005).

        **B.    Plaintiff Griffith's Termination From The Somerset Housing Authority**

---

[1] At least two Circuit courts have held that actions taken by a mayor-elect or councilperson-elect are not considered actions taken "under color of law" for § 1983 purposes. *See Burrell v. City of Mattoon*, 378 F.3d 642, 649–51 (7th Cir. 2004); *Carlos v. Santos*, 123 F.3d 61, 65 (2d Cir. 1997).

Along with working as a Sergeant for the Somerset Police Department, Plaintiff Jason Griffith worked a second job with the Somerset Housing Authority ("SHA"). From 1983 until November 30, 2006, Girdler served as the Executive Director of the SHA. The Plaintiffs allege that "[b]efore Mayor Girdler took office . . . he drafted a letter to Sergeant Griffith dismissing him from further duties for the Somerset Housing Authority, further retaliating against him for political activities." However, the Plaintiffs have not named Girdler, in his official capacity as Executive Director of the Somerset Housing Authority, as a defendant in this case. Therefore, summary judgment will be granted in favor of Girdler with regard to this claim.

It is undisputed that Girdler resigned his position at the SHA on November 30, 2006 and that Griffith received the termination letter at some point after this date but before December 15, 2006. However, the Plaintiffs contend Girdler maintained effective control over the SHA during this period. They note that Girdler kept his office in the SHA and held at least two meetings with Biggerstaff at this office during December 2006. While Girdler denies sending the unsigned letter terminating Griffith's service, the Plaintiffs claim that "Girdler's penchant for drafting unsigned letters, his intimate familiarity with Griffith's termination, his control of the SHA, and his expressed discontent with Griffith creates a trail of bread crumbs leading straight up to the Mayor's door."

Assuming that Griffith could prove Girdler maintained control over the SHA and that it was his decision to terminate Griffith, the Plaintiffs have not named Girdler, in his official capacity as Executive Director of the Somerset Housing Authority, as a defendant in this case. Girdler is only named as a defendant in his individual capacity and in his official capacity as the

mayor of Somerset, Kentucky. Girdler was not the mayor when Griffith was terminated, and there is no evidence that Girdler, in his individual capacity, had the authority to fire a SHA employee. Since there is no named defendant against whom this claim can be properly asserted, summary judgment will be granted in favor of Girdler regarding this claim.

### C. Removal Of Allan Coomer As Acting Police Chief

In December 2006, then-Chief of Police Biggerstaff tendered his resignation to out-going Mayor Wiles. Later that same month, Goff resigned his position as Assistant Chief of Police and requested to be returned to his former position as Lieutenant. To fill the leadership void left by these two resignations, Wiles appointed Plaintiff Allan Coomer as Acting Police Chief in late December 2006. Within ten days of being inaugurated, Girdler removed Coomer as Acting Chief of Police and returned him to his former rank of Lieutenant. The Plaintiffs contend Coomer was removed as Acting Chief of Police for a discriminatory purpose, *i.e.*, because he supported Wiles instead of Girdler in the mayoral election. However, Coomer's removal was not a deprivation of his constitutional rights even if he was removed for supporting Wiles.

In Kentucky, the position of Chief of Police is a "nonelected city officer" appointed by the mayor with city council approval. KRS 83A.080(2)(d),(3). As such, the Chief of Police is an at-will employee who can be fired by the mayor for any nondiscriminatory reason. KRS 83A.080(3); *Smith v. City of London*, No. 94-112, 1995 U.S. Dist. LEXIS 21231, *12 (E.D. Ky. Jun. 5, 1995) (citing *McCloud v. Whitt*, 675 S.W.2d 375, 376–77 (Ky. App. 1982)).

Although an at-will employee can generally be terminated for any reason, a government employer cannot terminate an at-will employee for exercising his First Amendment rights. *Perry*

*v. McGinnis*, 209 F.3d 597, 604 (6th Cir. 2000) (citing *Rankin v. McPherson*, 483 U.S. 378, 383 (1987)). However, "[i]f an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." *Branti v. Finkle*, 445 U.S. 507, 517 (1980). "Whether a public employee is protected from a politically-motivated dismissal thus turns on the nature of the position – that is, the 'inherent duties' of the job." *Burbeula v. Richard*, No. 96-1353, 1997 U.S. App. LEXIS 21727, *20 (6th Cir. Aug. 14, 1997) (unpublished) (citations omitted).

In an unpublished opinion addressing this issue, the Sixth Circuit has held that the "position of police chief falls squarely within a category of public jobs the holders of which are subject to patronage dismissals." *Burbeula*, 1997 U.S. App. LEXIS 21727 at *21. The court explained:

> Given the discretionary authority with respect to the enforcement of the law that inheres in the chief's position, it is obvious to us that political affiliation is a reasonably appropriate requirement for the job. . . . The board of trustees, it seems to us, was entitled to select a chief who would manage the police department and enforce the law as the board saw fit. Any other rule would hamper the board's ability to implement its policies. We think that political loyalty, whether partisan or personal, is an essential attribute to the job of . . . police chief.

*Id.* (internal citations and quotations omitted).

Other circuits have reached similar holdings regarding this issue. For example, in *Wilson v. Moreau*, 492 F.3d 50 (1st Cir. 2007), the First Circuit held that the position of police chief is a policy-making position and is not subject to the protections of *Elrod v. Burns*, 427 U.S. 347, 360 (1976). *Wilson*, 492 F.3d at 52. Therefore, the plaintiff did not have a viable First

Amendment claim even if his dismissal as police chief was based on his political affiliation. *Id.* at 53. Similarly, the Fourth Circuit has noted that a city police chief falls within the category of employees who are subject to removal based on their political affiliations. *Conner v. McGraw*, No. 94-1313, 1996 U.S. App. LEXIS 33870, *13 (4th Cir. Dec. 30, 1996) (citing *Stott v. Haworth*, 916 F.2d 134, 144 (4th Cir. 1990)). *See also Wagner v. Davis*, 122 F.3d 53, 55 (1st Cir. 1997); *Armstrong v. City of Arnett*, 708 F. Supp. 320, 322–26 (W.D. Okla. 1989).

Within the Somerset Police Department, "[t]he Chief of Police is the commander and has overall responsibility for the entire police department." *See* Organizational Structure [Record No. 68, Ex. Q] As the commander of the department, the Chief of Police clearly has the power to make policy decisions, including decisions related to the overall structure of the department and its divisions. *Id.* Thus, following the reasoning of the above-cited cases, the Somerset Chief of Police falls within the category of public employees subject to removal based on political affiliation.

At the time of his removal, Coomer was the *Acting* Chief of Police, not *the* Chief of Police. The Plaintiffs argue there is a critical distinction between these designations, but they have offered no authority to support this claim. The fact that the mayor appoints an Acting Chief of Police on an interim basis until a Chief of Police is appointed for city council approval is irrelevant. The pertinent issue is whether an Acting Chief of Police should be included in the same category as a Chief of Police for the purpose of being subject to removal based on political affiliations. Since an Acting Chief of Police fills the shoes of Chief of Police until a permanent Chief is appointed and confirmed, there is no reason why an Acting Chief of Police should not

also be subject to removal based on political affiliations. Therefore, even if the Plaintiffs proved Coomer was removed based on his political support of Wiles, this removal would not constitute a violation of his First Amendment rights.[2]

Since the Plaintiffs have failed to establish the existence of a constitutional violation with regard to Coomer's removal, the Plaintiffs would be unable to succeed on this claim pursuant to § 1983. Therefore, summary judgment will be granted in favor of Girdler with regard to this claim.

### D.   Claims Not Subject To Dismissal Under Rule 56, Fed. R. Civ. P.

The parties do not dispute that the Plaintiffs were involved in conduct protected by the First Amendment when they campaigned for Wiles while off-duty. Therefore, the Plaintiffs can establish a *prima facie* case of First Amendment retaliation by demonstrating that: (1) they were subjected to adverse employment actions by Girdler, and (2) a causal connection exists between the adverse employment actions and their campaign activities. *Thaddeus-X*, 175 F.3d at 431. Since the Plaintiffs can establish the existence of genuine issues of material fact regarding both of these elements, summary judgment will be denied, in part. *Barr*, 538 F.3d at 561.

#### 1.   Adverse Employment Actions

The Sixth Circuit lists discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote as examples of adverse employment actions. *Thaddeus-X*, 175 F.3d at 396

---

[2]   Girdler's actions may have violated KRS 95.470 which prohibits the removal of police officers based on political affiliation. However, the fact that Coomer's removal may have violated a state statute does not mean that his federal constitutional rights were also violated. The Court passes no judgment on the issue of whether Coomer's removal violated KRS 95.470 because the Court previously declined to exercise supplemental jurisdiction over this state law claim. *See Griffith v. Girdler*, No. 07-442, 2009 U.S. Dist. LEXIS 34832, * 15–21 (E.D. Ky. Apr. 8, 2009).

(citations omitted). However, this is a nonexhaustive list, and there are numerous smaller examples of employment actions which may also be considered adverse. To determine whether actions of lesser severity merit being considered "adverse" for the purposes of a retaliation claim, the Sixth Circuit has indicated that an official's action is "sufficiently adverse to be cognizable in a retaliation claim under § 1983" if the act "would chill or silence a person of ordinary firmness from future First Amendment activities." *Id.* at 397 (citations and internal quotations omitted). When analyzing whether actions are sufficiently "adverse" for the purposes of a retaliation claim, it appears the alleged actions should be considered collectively rather than individually. *See, e.g., Habel v. Twp. of Macomb*, 259 F. App'x 854 (6th Cir. Dec. 28, 2007) (unpublished); *Sharpe v. Cureton*, 1999 U.S. App. LEXIS 531 (6th Cir. Jan. 13, 1999) (unpublished).

The Plaintiffs allege that Girdler subjected them to a variety of employment actions, including: (1) failure to promote the Plaintiffs; (2) the deactivation of the Emergency Response Team ("ERT"), of which Plaintiffs Goff, Hunt, Stevens, and Griffith were all members; (3) moving the Plaintiffs into much smaller offices; (4) changing the Plaintiffs' schedules; and (5) the posting of an off-color sign warning that "The Beatings Will Continue Until Morale Improves." While it is undisputed that the ERT was deactivated by Girdler, there are factual issues regarding whether the other actions can be attributed to him.

Summary judgment should not be granted unless the evidence is so one-sided that a party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52; *Harrison*, 539 F.3d at 516. Viewing the alleged actions collectively and in a light most favorable to the Plaintiffs, the

evidence is not so one-sided that a reasonable jury could not conclude that the above-listed employment actions were sufficiently "adverse" for the purposes of a retaliation claim.

### 2. Causal Link

There is also a material factual issue regarding the causal link between the allegedly adverse employment actions and the Plaintiffs' exercise of their First Amendment rights. In support of their claim that a causal link exists, the Plaintiffs note that former Chiefs of Police Biggerstaff and Peek testified in their depositions that Girdler made numerous statements regarding his intention to punish the Plaintiffs for supporting Wiles. Girdler denies making most of these statements, so a factual issue exists regarding whether the statements were actually made. In addition, viewing the evidence in a light most favorable to the Plaintiffs, a reasonable jury could find that a causal link exists between the allegedly adverse employment actions and the Plaintiffs' support of Wiles.[3]

## II. CONCLUSION

For the reasons discussed herein, it is hereby

**ORDERED** as follows:

(1) Defendant Eddie Girdler's motions for summary judgment [Record Nos. 67 and 68] will be **GRANTED** regarding all claims related to Plaintiff Randy Goff's alleged

---

[3] Girdler would not be entitled to qualified immunity under the facts presented. Qualified immunity protects government officials performing discretionary acts "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person wold have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A violation of a plaintiff's First Amendment rights is a violation of a clearly established right. *See Habel*, 258 F. App'x at 858--59 (citing *Chappel v. Montgomery County Fire Protection Dist. No. 1*, 131 F.3d 564 (6th Cir. 1997)). Therefore, if the Plaintiffs establish that their First Amendment rights were violated, Girdler would not be entitled to qualified immunity.

constructive termination" as Assistant Chief of Police, Plaintiff Jason Griffith's termination from the Somerset Housing Authority, and Plaintiff Allan Coomer's removal as Acting Chief of Police.

(2) Defendant Eddie Girdler's motions for summary judgment [Record Nos. 67 and 68] will be **DENIED** regarding all other remaining claims.

This 8th day of July, 2009.



Signed By:
*Danny C. Reeves* DCR
United States District Judge